CROW v. McADOO, Director General.
(No. 6142.)

(Court of Civil Appeals of Texas. Austin. Feb. 4, 1920.)

1. MASTER AND SERVANT ⊜319(1)—PERSON DISINFECTING CARS "INDEPENDENT CONTRACTOR."

One contracting with a railroad company to disinfect its stock cars on a car basis, hiring and discharging his help, and doing the work, including the mixing of materials furnished by the company with a formula, without its control or supervision, and having no connection with it when the work ceased, and required to sign an extra labor roll as a matter of bookkeeping, is an "independent contractor," for whose acts causing injury to one assisting him the railroad company is not responsible.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Independent Contractor.]

2. NEGLIGENCE ⊜63—THERE CAN BE NO RECOVERY FOR INJURIES RESULTING FROM UNAVOIDABLE ACCIDENT.

Damages for injuries proximately resulting from unavoidable accident are damnum absque injuria.

3. MASTER AND SERVANT ⊜319—INDEPENDENT CONTRACTOR'S WORK OF DISINFECTING CARS NOT INHERENTLY DANGEROUS, RENDERING RAILROAD LIABLE FOR INJURY TO CONTRACTOR'S EMPLOYÉ.

Where a railroad company engaged an independent contractor to disinfect stock cars with a medicated creosote solution which work was not inherently dangerous, an employé of the contractor, who was not warned of the danger of slipping and suffered injuries from the splashing of the solution in the eye, cannot recover from the company; the contractor's fault being purely collateral to the work.

Appeal from District Court, Brown County; J. O. Woodward, Judge.

Action by Henry Crow, a minor, by his father, F. F. Crow, as next friend, against William G. McAdoo, Director General of Railways. From a judgment for defendant, plaintiff appeals. Affirmed.

I. J. Rice, of Brownwood, for appellant.
Harrison & Cavin, of Eastland, Terry, Cavin & Mills, of Galveston, and Lee, Lomax & Smith, of Ft. Worth, for appellee.

Findings of Fact.

BRADY, J. Henry Crow, a minor, by his father, F. F. Crow, as next friend, brought this suit against William G. McAdoo, in his capacity of Director General of Railways, and particularly as director, manager, and operator of the Gulf, Colorado & Santa Fé Railway Company, for damages for personal injuries.

It was alleged that Henry Crow, at the date of his injuries, was only 17 years of age, and was employed by the agent and vice principal of appellee, one H. S. Stone, without the consent of his parents, with whom he was living. The work at which he was injured was the disinfecting of stock cars on the railway tracks at Brownwood, Tex. It was alleged that he was not warned of the danger incident to the employment, and was ignorant of the same, and that the chemical solution used in the work of disinfecting was furnished by the railway company; that it was poisonous, and calculated to injure persons handling it in the manner employed, and especially in so applying it as to the inexperienced, and children of immature judgment, without knowledge of its dangerous character. The injuries were averred to have resulted from the splashing of some of the solution in the eye of Henry Crow, while engaged in such work.

In addition to general and special exceptions and denials, the appellee specially defended upon the ground that Stone was not its agent, but was an independent contractor, for whose acts and omissions appellee was not liable, and that the injuries resulted from unavoidable accident.

---

⊜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

At the close of the plaintiff's evidence, the court gave a peremptory instruction to the jury to find for the defendant, because there was no evidence showing that Stone was an employé of defendant, and further because the injury was a mere accident on the part of plaintiff. Upon a verdict for defendant, judgment was rendered accordingly.

The material facts are that Henry Crow, 17 years old, was employed by H. S. Stone to assist in disinfecting certain cars which Stone had contracted with the railway company to disinfect. Stone had authority to employ and discharge whom he pleased, without any control or supervision by the railway company, and without the latter having reserved any right to supervise or direct the duties, details, or manner in which the work should be done. Stone had previously, through the local railway agents at Brownwood, been engaged to transfer loads from cars, to reload bad order cars, and to disinfect and to bed stock cars, and to do similar work from time to time, as required by the railway company. In the work of disinfecting cars, a medicated creosote, mixed with a solution of water and lime, was used by Stone. The materials were furnished by the railway company, together with a standard formula for mixing the same, but the preparation and mixing of the solution was done by Stone. Stone was paid by the job, depending upon the amount of work he did; that is, so much per car. He was not a regular employé of the railway company, and when he finished a given piece of work his connection with the corporation ceased until new work was assigned to him. In accordance with the agreement and understanding, he also performed work for other persons while transferring, unloading, and disinfecting cars for the railway company. Stone was carried on the extra labor roll of the Santa Fé at Brownwood, upon which were also carried persons who performed the character of work done by Stone, and such persons were paid for the work done out of the cash drawer by the agent, who required them to sign the extra labor roll, but this was a mere matter of bookkeeping.

According to the testimony of Henry Crow himself, the injury occurred by his foot slipping in the car, and splashing some of the solution in his eye. His statement was:

"When I slipped in the car I went down, and when I went down the can hit the floor, and splashed a big lot in my eye, and I fell forward to my hands and knees."

### Opinion.

The ruling of the trial court presents two questions, an affirmative answer to either of which requires the affirmance of the judgment. These questions will be considered in their order, and they are:

First. Was H. S. Stone an independent contractor?

Second. Were the injuries proximately caused by an unavoidable accident?

[1] The rules for determining whether the relation is that of an independent contractor or of master and servant were early announced by our Supreme Court in the case of Cunningham v. Railway Co., 51 Tex. 503, 32 Am. Rep. 632, in which the court said:

"There is marked distinction between the liability of the master for the acts of an ordinary servant in the usual scope of his duties as such and that of an employer for the acts of an independent contractor. This distinction rests upon the reasonable principle that, in a proper case, the liability of the master should be commensurate with the extent only of his right to control. * * *

"In the first relation, that of master and servant, the master has the right to direct the conduct of the servant and the mode and manner of doing the work, and hence his corresponding liability for an improper execution of the same. Wood on Master and Servant, § 281.

" 'He is deemed the master who has the supreme choice, control, and direction of the servant, and whose will. the servant represents, not merely in the ultimate result of the work, but in all its details.' Shear. & Red. on Neg. § 73.

"In the second relation, that of employer and independent contractor, there is no such control and direction by the employer over the servant in the details of the work.

" 'The true test * * * by which to determine whether one who renders service to another does so as a contractor or not is to ascertain whether he renders the service in the course of an independent occupation representing the will of his employer only as to the result of the work, and not as to the means by which it is accomplished.' Shear. & Red. on Neg. §§ 76–79; 1 Red. on Railways, 505; Pack v. Mayor of City of New York, 4 Seld. [8 N. Y.] 222.

"It is now the well-established doctrine in Europe, and the generally prevailing rule in this country, that the ordinary relation of principal and agent and master and servant does not subsist in the case of an independent employé or' contractor who is not under the immediate direction of the employer."

In Railway Co. v. Couch, 56 Tex. Civ. App. 336, 121 S. W. 189, this court stated the rule as follows:

"In general, one who has contracted with a competent and fit person exercising an independent employment to do a piece of work not in itself unlawful, or of such a nature that it is likely to become a nuisance, or to subject third persons to unusual danger, according to the contractor's own methods, and not subject to control except as to the results of the work, etc., will not be answerable for the wrongs of the contractor, his subcontractors, or servants committed in the prosecution of the work.

"An 'independent contractor' is one who renders services in the course of an occupation representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished. Such contractor

must answer for his own wrongs and those of his servants; and, if the proprietor has been compelled to pay damages on account of the contractor's negligence, he may recover them from the contractor."

In Edmundson v. Coca-Cola Co., 150 S. W. 273, in which a writ of error was denied by the Supreme Court, appellant sought recovery for personal injuries while working under one Tufts, in the construction of a building for appellee. Tufts was erecting the building in accordance with plans and specifications furnished by appellee, and was to receive the total cost of the building, plus 10 per cent. The facts showed that he submitted the bills for material and pay rolls to appellee for approval; that the payments were to be made in the course of the work, and not upon its completion, and that the appellee paid the bills incurred by Tufts for telephone, printing, stamps, and traveling expenses. It was held that Tufts was not the servant of appellee, but an independent contractor.

The same holding was made in Telephone Co. v. Paris, 39 Tex. Civ. App. 424, 87 S. W. 725, in which the appellee was engaged to paper the walls and ceiling, and paint the woodwork, in appellant's offices, the work upon completion to be subject to acceptance by appellant.

In 14 Ruling Case Law, page 71, the rule is stated thus:

"The control of the workmen doing the actual manual labor in the performance of the work is an extremely important element in determining whether the employé is an independent contractor. The fact that the contractor employs, pays, and has full power to control the workmen is practically decisive of his independence."

In Railway Co. v. Yonley, 13 S. W. 333, the Supreme Court of Arkansas held that a person employed by a railway company to clear off and burn rubbish on its right of way, on a mileage basis, hiring, paying, and controlling his own help, was an independent contractor, and the railroad company was not liable for damages caused by the spreading of fires due to the negligence of the contractor and his employés.

To the same effect is the decision in City of Groesbeck v. Pinson, 21 Tex. Civ. App. 44, 50 S. W. 621, as to a person verbally employed by the city to make certain excavations for reservoir purposes. In that case, Whittington, the party employed by the city to do this work, was paid by the day, and the city paid all expenses, including the labor of persons hired by Whittington and teams hired by him.

Applying the tests prescribed by the above decisions to the facts of this case, we have concluded that the undisputed evidence shows that Stone was an independent contractor in the work here involved, and was not the servant or agent of appellee. We have carefully considered all the evidence, and, although not required to do so, have gone to the statement of facts for the evidence bearing upon this issue. The only elements tending to show the relation of master and servant were the fact that appellee furnished the materials and formula for making the solution used in the work, and the further fact that Stone was carried on the extra labor roll. These considerations are insufficient to raise an issue of fact for the jury, under all the evidence in the record. The evidence shows that Stone was independent of appellee in the selection and discharge of his employés, and in the manner in which he should do the work, and represented appellee only in the results of the work, and these elements, under the facts and circumstances of this case, are decisive of the relation. We hold that Stone was indisputably an independent contractor.

[2] As to the other question, we think it clear from the testimony of Henry Crow himself that his injuries proximately resulted from an unavoidable accident, and that the damages are "damnum absque injuria." 1 Corpus Juris, 394, 970.

[3] There only remains to be considered the suggestion in appellant's brief that appellee would be liable for his damages because the work was inherently dangerous, and that Stone was negligent in failing to warn him that he might slip. We are of the opinion that under the evidence the work could not be classed as inherently or intrinsically dangerous, and that, as appellant's injuries were the result of an act or fault purely collateral to the work to be done, and at most could be claimed to be the wrongful act of an independent contractor, appellee would not be liable. Mo. Valley Bridge & Iron Co. v. Ballard, 53 Tex. Civ. App. 110, 116 S. W. 98.

All assignments will be overruled, and the judgment will be affirmed.

Affirmed.